Good morning, Your Honors. I'm here on behalf of plaintiff appellant Douglas Campion. I would like to reserve three minutes for the battle. Could you be sure and speak mildly because you're taller than the microphones? Yes, Your Honor. Thank you. This court should reverse and remand for four independently sufficient reasons. Help me first on jurisdiction. We have some cases that have been more tolerant than the cases from some other circuits on when a proposed class action becomes moot. They usually have some other element. Like in one of them, if the settling plaintiff had gotten the class action decision not to certify overturned, he'd get a substantial amount of money. I think it was $20,000. There could be various cases where he retained some personal interest. In this case, my understanding of the settlement agreement was if you win, you lose, whatever happens, Campion's not going to get a penny, nor does he have any deal where any of his expenses of litigation are going to be reimbursed, or for that matter, any indication that he has expenses of litigation. His counsel certainly does. This was hard fought. And counsel would be compensated if the plaintiff prevailed. But I can't see where Campion gets a thing. He sure can't get an injunction because he's not going to get any more appliances. He's not going to be calling the old Republic Protection Company to cover any more appliances. I just can't see where there's any dismissal without prejudice. Sure, in some circumstances, dismissal with prejudice, dismissal without prejudice. Occasionally, we have a very convoluted case where you can appeal either way. But usually all dismissal without prejudice means is find yourself another plaintiff and file another case. And in this case, I think plaintiff's counsel has done that, and there's another case pending in district court with another putative class action plaintiff. What's in it for Campion? As we cited in the letter brief, he still retains a personal stake under the Ninth Circuit Law. What personal stake? I know you said that, and I know we have cases that say there can be a retained personal stake, but I couldn't figure out what it was. Well, one of them is seeing the class certification decision to the end. Seeing it to the end, you mean the personal stake of feeling good? Well, one is getting the class certification ruling reversed. But what would it matter to him if he got it reversed? He wouldn't get a nickel. Well, he wouldn't get a nickel, but the class would get a relief. The rest of the class, not him. Correct. Is that correct? He wouldn't get a nickel? He would not get a nickel now that he has settled his personal individual claims for damages. So besides the satisfaction of seeing it to the end, what's in it for him? Well, it's twofold, Your Honor. And once we say it in a brief, if he, the cases under the Ninth Circuit are pretty clear, even if his individual claim is moot, it doesn't matter to the class certification decision. He can represent the class if, so he has a personal stake in getting the class certification ruling reversed, remanded, and then getting the class certified, even if he has. . . He can be a class representative if he's settled out. Well, I guess that would be a different bridge to cross once we come back to district court, if this court reverses. And then I think some of the cases allow another individual to come in and substitute themselves who has still a viable stake for damages as a class representative. But I think the nicer case is . . . The theory of our previous cases, whether it's right or wrong, seems to be that there is an interest in being a private attorney general and an interest in preventing the defendant from picking off each potential plaintiff because their claim is small and they can be paid off. I mean, that's the theory behind it. I think that's correct, Your Honor. We have the cases, and I don't know if that's right, but we're bound by those cases. But I'm interested, as Judge Kleinfeld is, in whether there is any sort of financial stake left, whether it be expenses or something like that on the part of the individual plaintiff. Well, that's twofold, Your Honor. One is, we don't think the Ninth Circuit case law requires for there to be any financial stake left. I think, as Your Honor mentioned . . . I understand that. I'm asking you factually. There is, Your Honor. There is. As you mentioned there, Campion is presiding as a private attorney general. He and his counsel are undertaking the pursuit of this litigation. So as a case of deciding . . . Well, his counsel certainly has a stake, but that's different from Campion. Well, I think as a case of deciding on a letter brief, say that if the class representative of the punitive class, the main plaintiff, has an interest in spreading out the cost of the litigation to other classes . . . The way a settlement agreement could read is his costs will be reimbursed out of the class. But I think the way the settlement did read in this case, they won't be. Not Campion's costs. Not anything Campion had to pay his lawyer. Well, I don't think the focus is solely on the plaintiff's expenses. It's plaintiff or the counsel. I think the case that we find in the letter brief say that if plaintiff or his counsel have . . . They're contributing the cost of the litigation onto the class if there is successful class certification down the line. So I think under the case that we cited, he still has a sufficient personal stake in addition to getting the class verified in pursuing and having a life controversy. I would . . . Assuming we have jurisdiction, I'd appreciate your commenting on whether the district court was wrong to conclude that insurance policies are not services under the California statute. You referred to the CRLA claim, and one, we would disagree that those are insurance services. I think as we noted in our brief, there is a big distinction, and home warranty companies including All Republic have pointed those distinctions out to California legislature why a home protection contract is different than an insurance. And it's important to note that the CLRA was enacted to alleviate social and economic problems stemming from deception, deceptive business practices onto consumers. And it allows . . . It prohibits certain unfair and deceptive acts and practices undertaken to sell or lease goods or services. Counsel, we don't have a blank slate on what the CLRA means, so let's talk about the Fairbanks case. You would agree that the Fairbanks case, the California Supreme Court said that life insurance is not a service, correct? That's correct, Your Honor. Under your reading of the CLRA, is Fairbanks limited to life insurance? Is there any other service that . . . I shouldn't use the word service. Is there any other commodity or financial arrangement that would also fall within Fairbanks? Yes, Your Honor. I think Fairbanks, what it did is it looked at the plain meaning of the statute. It looked to goods or services, and then it looked at the definition of those words in the statute. What does goods mean? What do services mean? Services means work, labor, and services other than for commercial business purpose. So it looked at the specific plain language in the statute and looked at the case before it. In that case, like you said, life insurance. It said that life insurance, which is a contract of indemnity, which is limited to a contractual obligation to pay money, is that good or service? It concluded that . . . Isn't the obligation here really just to pay money? They reserve to themselves the right to either send somebody out to fix it or to just pay for it if it's covered. If the price of plumbers and electricians rose to a level . . . an appliance repairman rose to a level where it was always cheaper to just replace it, as I read the service agreement, they could just do that. Well, no, Your Honor. No, to the first question . . . It's like when you get a warranty, the company, they can fix the item you send back to them, or they can just give you a new one. Right, Your Honor, but this is different than a life insurance. Life insurance, you only have an obligation to pay money. If someone dies, you pay out. That's only your obligation. But, counsel, what about something like, let's say, a personal articles floater in a homeowner's policy? Would you agree that that's insurance? Where they insure your personal goods in your house, your jewelry. My wife's wedding ring. Yeah, my wife's wedding ring. Okay. Is that insurance? Well, it would depend on the specific terms of . . . Well, because that's a very similar situation. If, let's say, Judge Owens' wife loses her wedding ring down the garbage disposal . . . That would be very bad, by the way. Well, that would be very bad in many respects, but most of those policies, instead of just paying money, will give them the option to the insurance company, the option to require you to have them replace or repair the item before they'll pay the money. Does that make it not insurance? Correct, Your Honor. I think . . . You would argue that pretty much, I think, everything but life insurance would . . . Like car insurance. Fire insurance. They fix up the house if it's cheaper, or they just pay for it if it's more expensive. Right, Your Honor. I mean, you look at the principal object of what you have in front of you, and if the principal object is just a contractual obligation to pay money, then it's insurance. If all under Fairbanks, it's not services. So under your theory, none of these policies would even be covered by the insurance code, it sounds like, because you wouldn't view them as insurance. Well, I think . . . Is that right? Well, it's a different question, Your Honor, with respect to home-oriented companies, home-oriented plans. They're covered by the insurance code to an extent. There are specific exceptions to which sections of the insurance code do not apply to home-oriented contracts. This is most insurance that people have, I think. Collision and comprehensive, they can either fix your car or total it out, which means they just pay for it. Fire insurance, they can either fix your house or pay for it. And it looks like this appliance insurance here is the same thing. They can fix it or pay for it. No, Your Honor, I mean, the whole point of getting a home-oriented contract is to get a low-cost repair or replacement article when it breaks down from a pre-qualified, from a pre-screened qualified contractor. I mean, that's what the whole point of this insurance, of this home-oriented contract is. Overall, it does not just obligate itself to pay out. What it promises, what it gets consumers, how it gets consumers to buy the plan, it promises we will, one, we will pre-screen and retain qualified contractors. That's a service. Second, let's see, Your Honor. I'm sorry. Second, it will take in the call from the consumer without requiring them to, I mean, usually we don't have a plan. What do you do? You go to Angel's List. You go to Yellow Pages. You have to go in and you have to find a reputable contract for yourself. AutoPublic prevents the consumer from worrying about that. They say, we'll take this responsibility. We'll do this service for you. They take the call from the consumer. They took a call from Campion. They went out and they found a contract, or is this plumbing, to send them out to Campion's house. That's a service. They undertook something more than an obligation to pay money. They undertook a service to... That's not like just taking your car to a body shop the insurance company likes? If there is provision in the oil insurance, they will take and they will repair your car. They'll do an estimate. That's a service, Your Honor. I think under Truda, which was cited in that brief, you look at the principal object and that would be if the principal object is provision of services, it falls under the CLRA. Okay. I mean, I understand where you're coming from. I don't see any of this in the Fairbanks case. Is there another case we should look at that you recommend that would kind of explain or support the theory you're offering? Because I have to say, you know, my wife was in a car accident a few months ago and I always thought it was insurance. And now you're kind of telling me it wasn't insurance. So is there a case we can look at that supports this argument you're making? Well, I think under Truda, which was cited in that brief, 183, Kyle, Up, 3rd, 802, I mean, you talked about collision damage waiver will not be an insurance because the principal object of purposes of production was the rental. And that was cited in that brief. And also some of the other cases, like district court cases, like Hernandez versus Hilltop, which talked about services related to mortgage loan, where the mortgage loan itself is provision of money, services related to that, like underwriting, origination, processing, the district court held that to be services under the CLRA. Counsel, you're down to about a minute. Did you want to save some rebuttal time? I do, Your Honor. Okay. Thank you. Good morning, Your Honors. I'm Jay Varon from Foley and Lardner for the defendant, Old Republic Home Protection. I'm going to assume that there's jurisdiction and we're talking about the merits of the deal. As I understand your deal, you're not free to argue that there is not jurisdiction. I believe that's true. Because of your settlement agreement. Is that right? I believe that's right, yes. Let me ask you about the California statute issue here. Because the text covers work, labor, and services, and then I'll skip some words, including services furnished in connection with the repair of goods. And Fairbanks is about life insurance, which clearly has nothing to do with repair of goods. But here the plan, the whole point of it is to give customers a service if their tangible goods require repair. And there is sort of a general presumption in the statute that the statute is to be liberally construed to help consumers. So why wouldn't we anticipate that the California Supreme Court would differentiate this situation from Fairbanks? I think, Your Honor, because the essence of the plan is, as I think your earlier questions of the panel suggested, is really insurance. Fairbanks talked about a contract. You know, I could see how it's two things. One thing that occurred to me on this case was it's kind of like AAA. You get a flat. If you don't feel like getting out of your car, fixing it on the freeway in the rain, you just call AAA and they take care of it. It's a little different, I think, Your Honor, because you're still, you're not, AAA isn't assuming any risk. The whole reason that the home warranty contract here is regulated by the California Insurance Department and falls within the Fairbanks rationale is that it's an assumption of risk, just like maybe it's not pure insurance. It's analogous to insurance. It's regulated by insurance, and the deal is you pay us this fixed fee premium and we will assume the risk of worrying about if your appliances or other covered items break. And if they do, we will either pay for them or, as Your Honor said, replace them, just like every other insurance policy. I had some curiosity about why the court in Fairbanks was so adamant about limiting its decision to life insurance. And in a way that at first made no sense to me, because many of the arguments concerning the evolution of the statute and the deletion from the model code of the word insurance and so forth would apply to any form of insurance. But it could also be that they were concerned about other forms of insurance that had as an adjunct the provision of goods or services in lieu of payment. And so how can we be sure that the California Supreme Court wouldn't treat this type of insurance differently? Well, Your Honor, I think you can be reasonably confident. First of all, they could have just limited it to life insurance because, as you know, courts are very careful and they take on the issue before them. Well, they could have, but they might have had some concern that the analysis would differ. They might have, but there's nothing in the opinion that suggests that they did. And if you look at the opinion, I mean, it's pretty clear that they concluded that insurance of all kinds was not to be viewed as part of a service. They didn't say that. We didn't say it, but their analysis screams it. They look at the definition of the statute, then they look at the legislative history. Right, but I just read you part of the definition that fits your situation and doesn't fit life insurance. I don't think so, Your Honor, because all it – I don't say that the repair of goods and any other service fit the statute, but we're doing that in a claims model. You don't have a California Supreme Court case on product warranties, right? We don't have a California Supreme Court case on home warranty. We have lots of district court cases and other cases. Everybody who's construed Fairbanks has concluded that automobile vehicle contracts, that home warranty contracts all fit within Fairbanks, and for good reason. Because in each of those instances, the company is assuming the same kind of risk. Many of the people who buy home warranty contracts never get any service from it. They just get the satisfaction, the lack of worry that if they need repair, they're not going to go broke fixing it. And that's the essence of insurance. I mean, even in life insurance, there are all kinds of services provided. Not exactly. Some insurance protects against catastrophe, like life insurance. Right. And some insurance protects against pretty affordable risks, like an extended product warranty. Exactly. If your iPhone breaks or, gosh, people get extended warranties on things a lot cheaper than that, that anybody who could buy the thing in the first place could replace. That's correct, Your Honor. So it really varies. A lot of insurance isn't catastrophe insurance. A lot of insurance isn't catastrophe, but it's all assumption of the risk. It's all about transference of the risk from the consumer, the policyholder, to the company. And given that the Model Act had insurance in it. A builder's warranty? No, the Model Act on which the CLRA was based had insurance originally in it when the California legislature adopted it, they took insurance out. That was an important factor in the Fairbanks decision. Where something can at least arguably be understood as being both insurance and the furnishing of services in connection with the repair of goods, how can we be certain what the legislature intended or at least how the California Supreme Court would interpret it? I think, Your Honor, that, again, if you take the proposition that I think Fairbanks shows you, that insurance services were not to be part of the CLRA like they were in the UNRRA Act, by contrast, then you look to see whether this is a situation like plaintiff's counsel cited where Home Depot agrees to resurface somebody's cabinets. Yes, that's what the CLRA was supposed to cover. But if it's part of a home protection plan or an extended warranty plan and there happens to be service associated with it that might independently be a service, that's not enough. Well, if we are uncertain of whether the California Supreme Court would extend Fairbanks to this situation, should we certify a question to the California Supreme Court? Well, Your Honor, I guess the question is how uncertain are you. Sure, if you are uncertain, courts of this kind certify questions to the California Supreme Court. But I would respectfully suggest to you that given the decisions that have come out on this, all the courts that have looked at it have concluded that these kinds of extended warranty policies, plans, they all have service associated with them, but the key aspect of them is this risk transference. And here, not only does the California Insurance Department regulate home protection plans and home protection companies, the plaintiff's complaint is littered with allegations that we violated the insurance code. I mean, I don't think this is the situation that you would certify a question to the California Supreme Court. I don't think that means anything. I mean, you can plead a case, you can say he negligently, claim one, he negligently hit my car, count two, he ran into my car on purpose. That's true, Your Honor. You can plead in the alternative, I grant you. But it still is a situation where every court that's looked at it, except the Edelson State Court decision, which was decided before Fairbanks, has concluded that these kinds of plans are insurance or insurance-like and aren't covered by the CLRA. And the reason that they've all done that is that when you look at the Fairbanks decision, it leaps out at you in terms of that's what the decision is. So I would respectfully suggest that the district court's analysis here is correct and it's in line with all the other courts since Fairbanks that have done it. If Your Honors are truly uncertain, I guess certification to the California Supreme Court is something that you could do. But, again, my position is that I think you can get there without that. Let me ask you, Counsel. Let's assume that your reading of the CLRA is correct. If I'm a consumer and I buy a home warranty, and let's say it's a total sham. I'm not saying your client, but a total sham company. And I call them up, my refrigerator's not working, and just no one shows up. Under California law, if the CLRA is not available for me, what would be my remedy? What action could I take? Plaintiffs have filed about 16 different counts, Your Honor. There's breach of contract, there's UCL, there's fraud. Those three leap to mind, misrepresentation. I mean, the Friedman complaint and this first complaint are littered with other claims than the CLRA. There's certainly a wide number of means that the consumers could get. And this is a little off topic here, but are you aware of any case law involving home warranties in that aspect? So put aside CLRA, are you aware of any courts analyzing whether those actions can be brought under the theories you just described? Well, I think these cases do that, Your Honor. I mean, it depends on the allegations. Part of the problem is that a lot of times we have plaintiffs bringing claims like this one, where they're standing a suspect, where they're suing on behalf of people that haven't dealt with the company or haven't seen the advertisement that they say is false. But certainly, breach of contract has been a solid claim. Mr. Campion had a claim for restitution here that was not taken away from him. It was decided that it couldn't proceed on a class basis, which I think is correct, and that's another argument that's been made. But I think the Walmart case and the Costco case pretty clearly show that the class certification decision was correct. But certainly, Mr. Campion had the individual claim for relief, and that claim was settled. And if it was brought as an individual claim, it would probably win every time, because who can afford to litigate it, for one thing? So I think that there is a measure of relief that consumers have, but the CLRA I don't believe is one of them. I don't think I need to say a lot about the standing issue. I mean, I think hang on. So what you do with a fly-by-night insurer? I'm sorry, Your Honor? So what you do with a fly-by-night insurer, like those outfits that sell secondary extended warranties on your car, is you don't sue them under the CLRA. You just sue them for fraud and breach of contract. Among other things. And you complain to the insurance department, and you complain to the attorney general's office, and if they're fly-by-night, they get dealt with it. As far as your personal remuneration, the problem, of course, with fly-by-night companies is that they don't necessarily have a lot of assets. But that's not a reason, I think, to broaden the CLRA beyond where it was supposed to be, based on, I think, the legislation's decision to take out insurance. Jim, have there been some California cases that you're aware of from California Court of Appeal on other companies where it's kind of mixed? Like one reason you call AAA is to get your car taken care of. Another reason is they know which garage is reliable enough to take care of your flat. The secondary outfits that sell extended warranties on cars, if you don't get the manufacturer's extended warranty, the idea is usually to get your car fixed rather than to pay for anything. Some dealers will fix it, and some won't. Are there other California Court of Appeal cases on these companies that are kind of mixed service and insurance? I know that there are two district court decisions against Choice Manufacturing Company that I think we cited in our briefs, in which, in each instance, the automobile vehicle contract or the automobile warranty that was sold separately was said not to be subject to the CLRA for the same reasons that basically Diaz and the district court here and the district court in Kaplan all decided that it was outside of the CLRA. So that's the extent of it. And I would just say, Your Honor, that in terms of what's out there in the marketplace, I think it's all kinds. I've certainly seen advertisements that ask you to do something like the home protection plan, especially with people who hold cars for seven or eight years. They make a pitch that they're going to break, and if you pay them this one flat fee, you won't have to worry about it. And then there are other people that just want you to repair their car there, and I think that's a big difference because one is risk transference and the other is a direct service. I think I've covered the three prongs. I would just say, I guess, on the fourth, which is the contention that the district court should have permitted the motion to amend, the district court wrote a very comprehensive and detailed decision. Generally, this court accords it great discretion, and there's really no reason to upset its findings there. There was not good cause here. There was not due diligence. The plaintiffs waited until the very end, after our summary judgment motion was completely briefed, to all of a sudden try to amend the complaint. The allegations that they labeled were new, were in the original complaint, as the district court pointed out. The allegations to amend the class were very similar to the ones that had been rejected as futile in the first place, and even had there been a slight difference, doing it at the very end of the case after we had briefed the summary judgment motion to get rid of the individual claims was under delay. It prejudiced us, and I think it was futile, even though the district court didn't decide on it. Thank you, counsel. Thank you very much, Your Honor. Mr. Kolasnikov, you have a little bit of time remaining. Thank you, Your Honor. How do we know that the Supreme Court in Fairbanks meant to limit the decision to life insurance? We can look to the Court of Appeal decision below, and I would like to quote from the decision. An insurance contract is not something akin to a haircut, a plumbing repair, or a two-year warranty on a microwave oven. It is simply an agreement to pay if and when an identifiable event occurs. That's 64, Kyle Reporter, 3rd, 623, 627. So the Court of Appeal below distinguished life insurance from a plumbing repair and a warranty on a microwave. The Supreme Court affirmed that decision, and we can use specific words, life insurance, in analyzing if life insurance qualifies as service. It's pretty clear the Supreme Court meant what it said, that life insurance is not service under the CLRA. I also want to address your point, Your Honor, and if you believe that there is unclear case law on this matter, the proper course would be to certify this issue to the California Supreme Court. Thank you, counsel. Your time has expired. Once again, we thank both counsel for very helpful presentations, and the case is submitted.
judges: Kleinfeld, Graber, Owens